JOHN T. ALDEN ET AL., Respondents, v. HENRY GROSS ET AL., Appellants.

St. Louis Court of Appeals, March 15, 1887.

1. TRADE MARK — EQUITY — INJUNCTION — GENERIC NAMES.—Words purely descriptive of an article, and descriptive of its quality or character, can not be appropriated, to the exclusion of other per-

sons, where they are unconnected with any symbol, or device as a brand, label, or trade mark.

2. —— The exclusive use of words, designed to deceive the public, when claimed as a trade mark, will not be protected by a court of equity.

3. —— A decree enjoining the use of a brand can not be upheld, on appeal, where neither the brand sought to be upheld, nor that claimed as an infringement, are preserved in the record, by sufficient description, or otherwise, and where the evidence does not show an attempted deception, nor that any one was deceived, by the alleged simulated brand.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and judgment.*

H. D. LAUGHLIN, and J. L. & F. P. BLAIR, for the appellants : The word "fruit," in connection with the word "vinegar," can not be appropriated by one vinegar manufacturer to brand his goods, to the exclusion of other manufacturers or vendors of vinegar. Browne, Trade Marks, sect. 134; *Phalon v. Wright*, 5 Phila. 464; *Canal Co. v. Clark*, 13 Wall. 311; *Re American Sardine Co.*, 3 Off. Gaz. 495; *Van Beil v. Prescott*, 82 N. Y. 630; *Pratt v. Farmer*, 10 Off. Gaz. 866; *Stokes v. Landgraf*, 17 Barb. 608; *Corwin v. Daily*, 7 Bosw. 222; *Filley v. Fassett*, 44 Mo. 168. The words, "fruit vinegar," are calculated to deceive the consumers of the product, and, therefore, there is no equity in the plaintiffs' bill. The defendants rely on the equitable principle that "he, who comes into a court of equity, must come with clean hands." *Fettridge v. Wells*, 4 Abb. Pr. 174; *Fettridge v. Merchant*, 4 Abb. Pr. 158; *Piddings v. How*, 8 Sim. 478; *Perry v. Truefitt*, 6 Beav. 66; *Partridge v. Mench*, 1 How. App. 558; *Hobbs v. Francais*, 19 How. Pr. 567; *Leather Cloth Co. v. Am. Leather Cloth Co.*, 4 DeG., J. & S. 137; *Morgan v. McAdam*, 15 L. T. (N. S.) 348; *Palmer v. Harris*, 60 Pa. St. 156; *Wolfe v. Burke*, 56 N. Y. 115; *Seabury v. Grosvenor*, 53 How. Pr. 192; *Helmbold v. H.*

*T. Helmbold Mfg. Co.,* 53 How. Pr. 453 ; *Holloway v. Holloway,* 13 Beav. 209 ; *Chappell v. Sheard,* 3 W. R. 646 ; s. c., 2 K. & J. 117 ; *Chappell v. Davidson,* 8 DeG., McN. & G. 1 ; *Comstock v. White,* 18 How. Pr. 421 ; *Dale v. Smithson,* 12 Abb. Pr. 237 ; *Smith v. Woodruff,* 48 Barb. 433 ; *Hennessy v. Wheeler,* 69 N. Y. 271 ; *Metzler v. Wood,* 47 L. J. Ch. 625 ; *Siegert v. Findlater,* 47 L. J. Ch. 233. The plaintiffs are selling an article of food of daily consumption. No court of equity will protect a vendor when such article contains a noxious or unwholesome ingredient. This principle is elementary law. The defendants' brand is not a colorable imitation of that of the plaintiffs'. It is not calculated to deceive an ordinary purchaser by its similarity to that of the plaintiffs'. Nor have the defendants ever represented their goods to be those of the plaintiffs' manufacture. *Leather Co. v. Am. Leather Co.,* 11 H. L. 523.

BAKEWELL & BAKEWELL, for the respondents : This case does not come within the ruling of those cases which refuse to extend protection to generic names. *Blackwell v. Armstead,* 5 Am. L. T. 85 ; Note to last case, Cox, p. 263, No. 466 ; *Thurley Food v. Massam,* 42 L. J. Rep. (N. S.) 457 ; *Seixo v. Provezinde,* Law R., 1 Ch. 192 ; *Canal Co. v. Clark,* 80 U. S. 311 ; *Sanford v. Utt,* 16 Mo. App. 322 ; *Sanders v. Jacob,* 20 Mo. App. 396. The word "fruit," as applied to vinegar, is not a generic name. *Eno v. Stephens,* 1 Trade Mark Cas. 325. The plaintiffs had the right to use the word "fruit," as applied to vinegar, for the mere purpose to give currency to their article, and to distinguish it from others of a similar character. *Oakes v. Tousmiene,* 14 Woods, 547 ; *Newman v. Alvord,* 51 N. Y. 189 ; *Sohl v. Gresendorf,* 1 Wilson (Ind.) 60 ; *Messerole v. Tynberg,* 4 How. Pr. 410 ; s. c., 36 How. Pr. 14. The plaintiffs have a right to the exclusive use of the name against these defendants, on account of the fraudulent competition in business, whether they have, or can have, a trade mark in the name

"fruit," or not. *Carbolic Soap Co. v. Thompson*, 25 Tex. 625; *McLean v. Fleming*, 6 Otto, 245; *Levy v. Walker*, 10 Ch. Div. 436; *Sea v. Wolff*, 46 How. Pr. 157; *Kinney v. Basch*, 16 Am. L. Rep. (N. S.) 596; *Perry v. Truefit*, 6 Beav. 66, 73. Courts of equity will, with great jealousy, protect a manufacturer, or trader, from unlawful competition in his business, and will override all technicalities to reach justice in a particular case. *Williams v. Johnson*, 2 Bosw. 1; *Ayers & Sons v. Meikle*, Pat. Off. Gaz., June 3, 1884, p. 1027; *Gamble v. Stephenson*, 10 Mo. App. 581; *Harrison v. Taylor*, 11 Jur. (N. S.) 408.

ROMBAUER, J., delivered the opinion of the court.

This was an application for an injunction to restrain the defendants from using the word "fruit," alone, or in combination with any other words, in branding the vinegar sold by the defendants; the plaintiffs claiming that they have the exclusive right to the use, in the above described manner, of this word, whether alone or in combination with other words.

The plaintiffs allege, in substance (omitting formal parts): (1) That they have been engaged for many years in the manufacture of vinegar; (2) that, early in 1878, they conceived the idea of branding their products as "fruit vinegar," and they were the first to conceive and use the said name; (3) that they have expended two hundred thousand dollars in advertising their wares, and have a large trade all over the United States; (4) that they manufacture a prime article; (5) that the trade and the public know their product as "fruit vinegar," and buy vinegar on the reputation of that name; (6) that the defendants, attempting to profit by this reputation of the plaintiffs' article, are selling their own vinegar as "fruit vinegar," and upon the reputation of the plaintiffs' vinegar.

Whereupon the plaintiffs ask an injunction against the defendants to prevent the defendants selling any

vinegar marked "fruit vinegar," or "from selling any vinegar (not manufactured by the plaintiffs) in such manner as to produce the impression on the public that it is the well known and popular vinegar of the plaintiffs."

In their answer the defendants set up: (1) That the plaintiffs can have no right to the use of the word "fruit" in connection with the word vinegar, to the exclusion of the defendants; (2) that, as applied to the plaintiffs' vinegar, the word "fruit" is false and misleading to the trade and to the public, for that the plaintiffs' vinegar is not composed, to any appreciable extent, of fruit, or the juices thereof, but is made upon a basis of alcohol, distilled from the small grains; and, therefore, the plaintiffs have no equity; (3) that the plaintiffs' vinegar contains poisonous elements, calculated to injure human health, and, therefore, equity will not protect them in its sale; (4) that there has been no colorable imitation, on the part of the defendants, of the plaintiffs' label so as to deceive any of the plaintiffs' customers, or any one; (5) deny all bad faith and infringement; and deny that they ever sold or attempted to sell any vinegar upon the representation that it was the vinegar of the plaintiffs.

Issue being joined on these pleadings, the court, after a full hearing, entered a decree in favor of the plaintiffs, the substantial parts of which are as follows: "It is by the court considered, adjudged, and decreed that the defendants, and each and every of them, and the servants, agents, and workmen of the defendants, and each and every of them, be perpetually enjoined and restrained from affixing, or causing to be affixed, to any packages, barrels, or cases of any description, sold, or offered for sale, by them, and containing any compound bearing the name of vinegar, or offered for sale as such (and which is not the manufacture of the plaintiffs), the name of "Alden Fruit Vinegar;" and also from affixing, or causing to be affixed, to any letter-

heads, bill-heads, cards, or advertisements, used by the
defendants, or any of them (and not concerning the
manufacture of the plaintiffs), the name of "Alden's
Fruit Vinegar;" and also from affixing or applying to
any goods manufactured, sold, shipped, or supplied by
them, or any of them, or to any advertisements, circu-
lars, bill-heads, or cards used by them, any mark' or
marks so contrived and prepared as to lead to the belief
that the vinegar sold or manufactured by the defendants,
or by any of them, is the manufacture of the said plain-
tiffs, or so contrived (by colorable imitation or other-
wise), to represent the goods manufactured, sold, or
offered for sale by the defendants, or any of them, as the
"Fruit Vinegar" of the plaintiffs; or so contrived as to
be likely to cause the vinegar of the defendants to be
mistaken by ordinary persons for the vinegar of the
plaintiffs; and that the plaintiffs recover their costs in
this behalf expended of the said defendants and have
execution therefor."

The defendants, appealing, assign a number of errors.
Their objections, however, are all comprised in the
following: (1) That the plaintiffs, under the pleadings
and evidence, have no standing in a court of equity;
(2) that the decree is not supported by any substantial
evidence of the infringement of the plaintiffs' label,
brand, or trade mark, and is, therefore, unwarranted.
Upon the hearing the following facts appeared: The
plaintiffs are, and have been for a long time, extensive
manufacturers of vinegar in this city. In 1878 they
appropriated the term "Alden's Fruit Vinegar" as one
of their many vinegar brands, and branded the best
vinegar manufactured by them, with this brand. No
copy of their brand was offered in evidence. They spent
large sums of money in advertising this particular brand,
which became quite popular and well known, and com-
manded a ready sale. The vinegar thus branded was
not manufactured out of fruit, in the plain, ordinary,
usual sense of that term, but out of low wines distilled

from cereals, and fruit enters into its composition only to a very insignificant extent. There was evidence tending to show that the words "Fruit Vinegar" were first used as a vinegar brand by the plaintiffs.

The defendant, Gross, as far as the record shows, went into the vinegar business in the year 1884, in this city, in co-partnership with his co-defendants, whc were former employes of the plaintiffs. The fiim thas formed did not manufacture any vinegar, but bought the ready made vinegar from other parties, and rebranded it as "Patent Process Fruit Vinegar," "Baldwin Apple Vinegar," and "New Process Fruit Vinegar." The vinegar thus bought and re-branded was also a low wine vinegar.

There is no evidence in the record that the defendants ever branded any of their vinegar as Alden's Fruit Vinegar, or that they ever threatened to do so. There is evidence that, on one occasion, they attempted to sell a small lot of their vinegar as Alden's Fruit Vinegar, not, however, by the aid of any deceptive or simulated brand, but simply by the aid of the unquestionably false statement, that the defendant thus attempting the sale still represented Alden's, and not the new firm. There is some evidence, that one of Alden's agents represented his fruit vinegar as manufactured out of apples, and also that the defendants represented their vinegar as manufactured out of apples, of cider, and of grapes.

It further appeared in evidence that vinegar is manufactured, both east and west, out of apple cider, the vinegar thus manufactured being, in the ordinary sense of the term, a fruit vinegar, and the only one that can be properly so called, if the word fruit is to be understood as denoting the article out of which the vinegar is made.

It further appeared in evidence, that the defendants, by their cards, letter heads, and circulars, represented themselves as the Niagara County Fruit Vinegar Com-

pany of New York, and St. Louis; as manufacturers of the Patent Process Fruit Vinegar, having presses and works at Lockport, New York, and a western depot at St. Louis, all of which representations were false. It did not appear, however, that the plaintiffs had or claimed to have any factory in Niagara county or Lockport, or that the words patent process, or any similar words, ever formed part of their brand.

It would seem from the decree that the court denied the plaintiffs' claim to the exclusive use of the word, "fruit," as applied to vinegar, as a trade mark. In this the court was clearly right. The proposition contended for by the plaintiffs, and ably supported in the exhaustive brief of their counsel, by a large array of authorities, that even generic and geographical names may be appropriated by prior use as trade marks, is not disputed, but neither can it be gainsaid, that when such word or name is in no sense extrinsic, but clearly indicative of the character or quality of the article to which it is affixed, the word by itself can never be thus exclusively appropriated. The word fruit, as applied to vinegar, is clearly thus indicative. Vinegar, as the evidence shows, is in many instances manufactured out of fruit. It would be a novel application of the rule governing the subject of trade marks, if one who manufactures vinegar out of cereals, could appropriate for the article thus manufactured the word fruit, and thereby exclude another from using the word as descriptive of an article, which is, in point of fact, manufactured out of fruit. We might, with equal reason, uphold the use of the word "wheat" as applied to bread, or of the word "corn" as applied to starch. It was justly said in *Filley v. Fassett* (44 Mo. 176), that no word as such can be appropriated to the exclusion of others, which is a mere description of the quality or character of the goods.

But whether the word "fruit," in this connection, is purely indicative of the character or quality of the

article or not, the plaintiffs' exclusive claim to it must fail on the further ground, that the use of the word, in that connection, is clearly deceptive. "An exclusive privilege of deceiving the public is not one that a court of equity can be required to aid or sanction," says Judge Duer in *Fettridge v. Wells* (4 Abb. Pr. 158). This proposition has been frequently asserted, and has never to our knowledge been denied. *Perry v. Truefit*, 6 Beav. 66; *Piddings v. How*, 8 Sims, 478; *Phalon v. Wright*, 5 Phil. 464; *Palmer v. Harris*, 60 Pa. St. 156; *Seabury v. Grosvenor*, 53 How. Pr. 192; *Helmbold v. H. T. Helmbold Mfg. Co.*, 53 How. Pr. 453; *Wolfe v. Burke*, 56 N. Y. 115.

Assuming, as we must, that the right to the exclusive use of the word "fruit," as applied to vinegar, was properly denied to the plaintiffs by the court below, and we must come to the conclusion that there is no evidence in the record to support the decree. Neither of the brands or labels is before us. It is nowhere shown that the defendants, by any peculiar arrangement of their brand, or surrounding symbols or devices, in any way simulated the plaintiffs' brand. There is no pretense that they ever branded any of their vinegar with the name of "Alden," or any similar name, or that their letter heads, bill heads, or circulars, ever contained the name of "Alden," or any name of similar sound or appearance. In fact, with the exception of the fact that both brands contain the words "fruit vinegar," there seems to be, absolutely, no resemblance between them. "What degree of resemblance is necessary to constitute an infringement, is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard, is to say that no trader can adopt a trade mark, so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled." *McLean v. Fleming*, 96 U. S. 251. How, then, can we, or how could the court below, find, that, in this instance, there is such a resemblance

between the two marks or brands, when the marks or brands are not before us, and were not before the trial court, and no description of them is found in the testimony. Some letter heads, cards, and circulars of the defendants were before the trial court, but no evidence that they, in any manner, were imitations of corresponding articles used by the plaintiffs. In *Partridge v. Menk* (1 How. App. 553), the two labels in controversy are preserved in the report, and, though there is a general similarity between them, Judge Wright, upon inspection, denied the injunction on the ground of dissimilarity alone.

That the defendants can not brand their vinegar with Alden's name, is a proposition too plain for argument, but there is no evidence that they ever did so, or attempted to do so. That they can not use for their brand, such imitation of Alden's brands as to mislead the public, by their marks or brands, into a belief that their vinegar is Alden's vinegar, is equally apparent, but there is no evidence that they ever did so, or attempted to do so. Their use of the word "fruit," in itself, is something of which the plaintiffs have no right to complain in equity. The mere fact that the defendants fraudulently tried to represent Alden's in a sale which they made, may render them liable for damages, if any were caused to Alden by the fraud, but is no evidence of the fact, that their brands, which were never seen by the party sought to be imposed upon, were deceptive. If they practiced any fraud, they did so by word of mouth, a fact which cannot, on any principle that we are aware of, lead to the suppression of their brands, marks, or circulars, by which no such deceit was ever attempted.

Thus it will be seen, that, while the decree, as far as it applies to the word "fruit" alone, must fall for want of equity, other parts of the decree must fall for want of evidence to rest upon.

All the judges concurring, the decree is reversed, and judgment for costs entered in this court for the defendants.