## SHELLEY, Appellant, v. SPERRY, Respondent.

### St. Louis Court of Appeals, January 8, 1907.

1. TRADEMARK: Unfair Trade: Good Will. Where an àrticle of merchandise has acquired a reputation as meritorious and is distinguished to the public by a certain brand or trade name or by the form of the package in which it is vended, the vending of another article of like kind under an imitation of the label or package designed to deceive the public, will be restrained by a court of equity at the suit of the owner of the article which has acquired the reputation; the reputation of the article is a part of the good will of the business of the dealer which he is entitled to have protected.

2. ———: ———: ———. Where a manufacturer manufactured an article of merchandise for the use of certain dealers and put it up in packages branded distinctly with the label of such dealers so that the article was put on the market exclusively under the trade names of such dealers and never put upon the market under his own name, the good will of the article was acquired under the trade names of the dealers so that the manufacturer could not restrain the selling by them of another similar article designated by the same label.

3. ———: ———: ———: Damages. Where a manufacturer manufactured an article of merchandise exclusively for the use of dealers and put it up in packages labeled with the names of the dealers so that it acquired a reputation under their trade name, and the manufacturer never put the article upon the market under his own name, he was not damaged by the selling of another article similar to his, by the dealers, under the same name and label, because he had never acquired the good will of the article, but had permitted the dealer to acquire it.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

Affirmed.

*Hugh K. Wagner* and *H. A. Loevy* for appellant.

Plaintiff was entitled to a decree and the court erred in refusing it: He was the first to use and, therefore, exclusive owner of the wrapper or carton in ques-

tion.  Hopkins on Trademarks, 244, 258; Bishop Case, 128 Mo. 381; Drummond v. Tinsley, 52 Mo. App. 27; Gaines v. Whyte, 107 Mo. App. 517.  In case of infringement plaintiff need not prove he has actually been damaged.  Conrad v. Uhrig, 8 Mo. App. 277.  Nor even that any person has been deceived.  Liggett v. Tobacco Co., 104 Mo. 53; Drummond v. Addison, 52 Mo. App. 10; Hopkins on Trademarks, 271, sec. 110.  Nor even to show intentional fraud.  Filley v. Fassett, 44 Mo. 176; Piracy should be checked.  Nicholson Case, 158 Mo. 163. Which will be granted even against an innocent vendor (which Am. Supply Co. was not, being a confederate of Sperry's in fact, the instigator of the offense).  Whether Sperry's powder was better or worse, is immaterial. Hopkins on Trademark, 373, secs. 7, 294; Nicholson v. Stickney, 158 Mo. 163.

*W. B. Homer* for respondent.

(1)  The trademark or label sued on does not point out the origin or the ownership to be in plaintiff, but on the contrary, points to the defendant as the owner of the same.  Canal Co. v. Clark, 13 Wal. 311; State v. Bishop, 128 Mo. 373; Filley v. Fassett, 44 Mo. 176; Hueblein v. Adams, 125 Fed. R. 782; Hopkins on Trademarks, 1. (2)  In order to maintain the ownership of a trademark it is necessary for plaintiff to show that his ownership has been long enough continued exclusively by himself to inform the public of his intention to adopt the same. Bissell v. Bissell, 121 Fed. R. 357; Hopkins on Trademarks, Secs. 10, 14; Levy v. Waite, 56 Fed. R. 1016; Tetlow v. Tappan, 85 Fed. R. 774; Brown v. Bolton, 58 Fed. R. 888.  (3)  Assuming the truth of the allegation in the petition that plaintiff was the manufacturer of the goods in question and put forth the goods with the false statement thereon, that they were "made only by the American Supply Co., St. Louis," then he cannot recover because he does not come into court with clean

hands. Alden v. Grosse, 25 Mo. App. 123; Manhattan Co. v. Wood, 108 U. S. 218; Worden v. Fig Syrup Co., 187 U. S. 516; Composition Co. v. Composition Co., 183 U. S. 1; Buckland v. Rice, 40 Oh. St. 526; Joseph v. Macowsky, 96 Cal. 518; Prince Mfg. Co. v. Paint Co., 135 N. Y. 24; Sirgrist v. Abbott, 61 Md. 276; Connell v. Reed, 128 Mass. 477; Stachelberg v. Ponce, 23 Fed. R. 430; Raymond v. Baking Powder Co., 85 Fed. R. 231; Alaska v. Alaska, 60 Fed. R. 103.

STATEMENT.—The petition in this case is in the nature of a bill in equity and the relief asked is an injunction against future imitations of a washing powder made by plaintiff, the packages in which it is put up, the labels printed on the packages, and damages for infringements of his rights already committed. Plaintiff Shelley does business in the city of St. Louis under the style of M. B. Shelley Manufacturing Company. He manufactures starch, baking powder, washing powder and other articles described as household sundries. Defendant Sperry is engaged in the like business in St. Louis. The defendants, American Supply Company and Red Cross Supply Company, do not make washing powder but deal in it through mail orders. They furnish household supplies in response to orders by mail, the articles being selected by their customers from catalogues. The Mound City Printing Company prints the labels and descriptive matter on the cartons or cases in which is packed the washing powder manufactured by plaintiff. This powder is alleged to be a valuable cleansing and polishing compound, useful for cleaning metals, china, glassware and all household articles. The petition says that six months before the institution of the present action, he had been selling the American Supply Co. and the Red Cross Supply Co.; that seeing the great utility and popularity of said powder, Sperry surreptitiously secured knowledge of its component parts and undertook to manufacture a cleaning and polishing

powder of the same kind and composed of the same constituents; seeking thereby to take from plaintiff the latter's customers with the object of undermining and ruining plaintiff's business and securing his trade; that Sperry had notified many of plaintiff's customers of his (Sperry's) readiness to fill orders for the same powder plaintiff had been making, and had solicited contracts from plantiff's customers, among others, the American and the Red Cross Supply Companies. The petition further states that plaintiff had been furnishing the powder to the American and Red Cross Supply Companies in boxes and cartons of a certain pattern and with a distinctive design printed and stained thereon, which was prepared by plaintiff and by him first used on a carton containing the Washing Powder; that the said Supply Companies had not previously used cartons for washing powder bearing such design; that plaintiff owns the plates 'from which the cartons are printed. Plaintiff charges that pursuant to a fraudulent scheme, the Sperry Manufacturing Company, under which title Sperry does business, tried to induce the Mound City Printing Company, with which plaintiff had deposited his plate or stone for printing cartons, to print labels and cartons for the use of the Sperry Manufacturing Company so that said defendant could furnish washing powder manufactured by it to the American Supply Company and the Red Cross Supply Company, and put it up in cartons bearing plaintiff's characteristic designs, and labeled with the same marks borne by the cartons in which plaintiff had been furnishing his washing powder to said Supply Company; that Sperry and the Sperry Maunfacturing Company had offered to fill the orders of said Supply Company and plaintiff's other customers with cartons of Washing Powder at a less price than plaintiff was accustomed to charge and less than plaintiff's goods cost to manufacture; that Sperry also took genuine labels and cartons of plaintiff, which

he procured from some persons, and got printers to make plates for him (Sperry) in exact imitation of plaintiff's genuine labels, to the end that Sperry might furnish said Supply Company and other wholesale and retail dealers and purchasers, packages of washing powder like those sold by plaintiff; that the preparation of the plate from which the printed labels and cartons in imitation of plaintiff's was in progress; that said Sperry and his company had notified the Red Cross Supply Company, with whom plaintiff had a valid contract to furnish 250,000 cartons of plaintiff's washing powder, that Sperry and his company would supply it with boxes of washing powder of the same size and shape and bearing the same characteristic designs as plaintiff's; that said Sperry and his company began to supply said Red Cross Supply Company with a washing powder in such boxes on or about June 15, 1905, at a lower price than plaintiff was furnishing same; thereby inducing the Red Cross Company to demand a reduction of price by plaintiff. The relief prayed is that Sperry and the Sperry Manufacturing Company, and all their agents and employees, be enjoined, first, from making, directly or indirectly, any plate or label for washing powder which are in any respect an imitation or copy of plaintiff's labels; second, from making or causing to be made any preparation which contains ingredients of washing powder practically like plaintiff's powder; third, from selling or offering to sell any washing powder bearing such imitation labels aforesaid, and representing that the powder they sell is like the powder made by plaintiff; that they be compelled to cancel their orders to the Mound City Printing Company, or any other printer, for making labels like plaintiff's and be required to destroy all labels, boxes or cartons already engraved or printed. As to the Mound City Company the relief prayed is that it be enjoined from printing labels in imitaton of plain-

121 App—28

tiff's or making a plate for that purpose and to give up any already printed or made. As to the American Supply Company, the relief prayed is that it be restrained from receiving from Sperry and the Sperry Manufacturing Company, or any other person, a compound or preparation made by said Sperry or Sperry Manufacturing Company and not made by plaintiff, which resembles, purports to be and is an imitation of plaintiff's genuine washing powder. No specific relief against the Red Cross Company was demanded, but there was a prayer for general relief. Sperry, the Mound City Printing Company and the American Supply Company answered by a general denial. The Red Cross Company filed no answer. The facts of the case are stated in the evidence without material discrepancy. Shelley manufactures the washing powder in controversy and other articles, such as starch, extracts, baking powder, etc. He had been selling the powder for six or eight months prior to the institution of this suit, had striven to introduce it to the trade and render it popular and his efforts had met with success; but we gather from the testimony that no sales had been made under his own name or business style, but all the sales through wholesale dealers who were held out as manufacturers of the powder. He had furnished, it seems, 500,000 cartons at ten dollars a thousand, to the American Supply Company under a contract, and prior to the institution of the suit had arranged a contract with the Red Cross Company to furnish 250,000 at the same price. The manager of the American Supply Company requested a lower price on the powder, being induced to do so by an offer from Sperry to furnish Sperry's washing powder at less than the company had been paying plaintiff. Sperry offered to furnish his washing powder to the Red Cross Supply Company at $7.20 a thousand and that company notified plaintiff of the offer. The consequence was that plaintiff, fearing he would lose said company's trade af-

ter the expiration of his current contract, reduced the
price on packages to be furnished under the contract to
$7.20, thereby losing $2.80 per thousand of profit.     The
cartons of plaintiff's washing powder furnished to the
American Supply Company had this label printed on
them in different colors:

"QUEEN

(picture of girl)

W A S H I N G   P O W D E R

The Great Household Cleaner

and Enemy of Dirt,

Cleans Gold, Silver, Brass,

Copper, Tin, China and Glassware.

For Scrubbing Floors or Clean-

ing Woodwork, it has no

Equal.

*Great Time and*

*Money Saver.*

Made                                    Only by

THE AMERICAN SUPPLY CO.,

St. Louis."

The cartons of powder plaintiff furnished the Red
Cross Company had a label printed on them, as we un-
derstand, containing a picture of a red cross, and styl-
ing the powder the Red Cross Washing Powder, the la-
bel in other respects being like the carton furnished the
American Supply Company.    The washing powder man-
ufactured by Sperry and his company differed both in
color and composition from that manufactured by plain-
tiff, and plaintiff asserts is of inferior merit.    It is put
up in cartons the exact size and shape of those in which
plaintiff's powder was furnished the two companies
and bearing the same labels.    Plaintiff contends that
this amounts to unfair competition and an infringement
of his trade labels by Sperry.    Other facts bearing on
this proposition must be related.    The American Sup-
ply Company sells various articles for use in the house-

hold; twenty-five or thirty different ones. It does business by mail orders exclusively. Every article sold by the American Supply Company is designated by the name of "Queen" and has a picture of a girl on the label; that is to say, it sells Queen Washing Powder, Queen Talcum Powder, Queen Bluing, etc. The company has expended more than four hundred thousand dollars in advertising the Queen brand of goods and giving its articles popularity throughout the United States. None of these articles are manufactured by the company itself, but by whomsoever manufactured, they are put up in packages containing the company's characteristic brand of "Queen" with the picture of a girl. The Red Cross Company does a similar business, in goods put up in packages containing a picture of a red cross and designated as Red Cross articles. When plaintiff made contracts with the two companies to furnish them his washing powder, they required him to pack it in specially prepared cartons bearing their distinctive trade designs. That is to say, the American Supply Company packages were to have the usual picture of a girl and bear the name "Queen Washing Powder;" and the Red Cross packages were to have the picture of a red cross and be labeled "Red Cross Washing Powder;" The matter printed on the labels of the cartons stated, in either case, that the powder was made only by the particular Supply Company whose label the package bore. The cartons furnished the American Supply Company stated that the Queen Washing Powder was made only by the American Supply Company of St. Louis; and the packages handled by the Red Cross Company, that it was manufactured only by the latter company. This statement was untrue, for the washing powder was manufactured by Shelley in the first instance, and afterwards by Sperry, after the latter had superseded Shelley. It seems that plaintiff originated the description of the qualities of the washing powder printed on the labels. When the

contract was made with the American Company, Shelley agreed to get up a special carton with the brand "Queen" on it and the picture of a girl, and took one of the company's Queen brand baking powder cans to have a cut made from it for the picture of the girl. Shelley prepared a carton and submitted it to the manager of the company for inspection. Some alterations suggested by the manager were adopted and the manager directed what colors should be used in the printing, but Shelley had the plate prepared from which to print the cartons. The evidence shows Shelley had made a similar arrangement with a concern known as the King Manufacturing Company, which sold an article known as Satin Starch. Shelley manufactured the starch for said Company and they required him to put it in packages bearing the label "King's Satin Starch." After making the arrangement with Sperry to buy his powder, the American Company offered to take from plaintiff all the cartons plaintiff had on hands and intended to be used in furnishing said company. The manager of the American Company furnished Sperry with a sample carton and Sperry had a supply of them printed. It seems he had previously prepared other articles for the American Company and packed them in cartons bearing the company's labels. The evidence does not prove any imitation by Sperry of plaintiff's powder, but shows on the contrary, that the two powders are so unlike in appearance as not to be mistaken for each other. About the time this suit was instituted, plaintiff's attorneys wrote a letter to the two supply companies, reciting plaintiff's grievance and that the suit had been instituted to prevent Sperry from imitating plaintiff's powder and enjoin the companies from using imitation labels. The letter said the companies need not file an answer or employ an attorney, as no relief would be asked against them except that they should not receive from Sperry any washing powder

which was an imitation of Shelley's or contained in a box having an imitation label.

On the foregoing facts the circuit court gave judgment for defendants and plaintiff appealed.

GOODE, J. (after stating the facts).—The plaintiff has not protected his washing powder by a trademark which the defendant might infringe, and the relief sought is against unfair competition; a legal subject-matter regulated according to the principles on which trade-marks are protected. The theory of plaintiff's case is that his commodity having become known to the public under the brands of Queen and Red Cross Washing Powder, and as sold in packages of a particular shape and size, acquired a popularity and value which the two supply companies and Sperry have appropriated to themselves by vending the Sperry powder in similar packages and bearing the same labels. The essence of the law of unfair trade is that the maker of or dealer in a given commodity shall not, by any deception, palm it off on the trade as the commodity of some other maker or dealer. If an article has acquired a reputation as meritorious, and is distinguished to the public by a certain brand or trade-name, or by the form of package in which it is vended, the vending of another article of like kind under an imitation of the label or package intended to deceive the public into believing it to be the meritorious article, will be restrained by a court of equity at the suit of the owner of or dealer in the latter article. [McLean v. Fleming, 96 U. S. 245-253, and cases cited.] In such cases, the reputation of the commodity is considered part of the good will of the business of the proprietor or dealer which he is entitled to have protected. [McLean v. Fleming, 96 U. S. l. c. 252.] The point of difficulty in the present case has been to find any good will or other property right of the plaintiff on which the defendants have encroached.

So far as appears, plaintiff's washing powder had never been sold by him in his own name nor under any distinctive brand or label which he had appropriated to it, but had been put on the market exclusively under trade-names belonging to the dealers for whom plaintiff manufactured the powder, namely, the two supply companies. Plaintiff had not designated his product either as Queen or Red Cross Washing Powder or by any other appellation. Neither had he advertised it on the cartons or elsewhere as of his make. That is to say, plaintiff did not own the good will of his powder, but whatever popularity it enjoyed was under the trade-names or trade-marks of the Supply Companies and constituted part of the good wills of those concerns. This state of affairs was brought about by plaintiff's own conduct in agreeing that the powder might be advertised under the brands of those companies and as manufactured exclusively by them. He might be denied relief on that ground alone. [Manhattan Co. v. Wood, 108 U. S. 218; Allen v. Grosse, 25 Mo. App. 123.] But aside from this point, is Shelley wronged by what defendants are doing? Is any property right of his invaded? If Sperry's powder was inferior to Shelley's, which was not proved, an opportunity was open to the companies and Sperry to defraud the public. The Sperry powder could be packed in cartons like those in which plaintiff's powder had been packed and bearing the same labels; thus inducing the customers of the companies to believe they were getting the identical powder they had previously gotten, whereas they would get another. The case would then be like that of a manufacturer of an article under a given brand, say a certain brand of cigars, who, after his goods have obtained popularity on account of their merit, makes and sells an inferior cigar under the same brand. In such instances the public are deceived and defrauded for a while and until the inferiority of the substituted article is generally known. But the question is, who may

interfere to prevent such conduct?    Not any citizen surely, but only one who has some particular interest in the matter; that is, whose rights are violated; though the fraud on the public has great influence in favor of restraining the deception.    It is true that Shelley is the maker of the powder originally sold in Queen and Red Cross cartons; but he is not known to be and the acts alleged against defendants will not prevent him from making and selling his powder in his own name.    And if perchance he has sold it already in his own name and built up a good will for it, this will not be impaired by what Sperry and the companies are doing, because their conduct cannot impair the reputation of powder sold under plaintiff's name but only of that sold under the Queen and Red Cross brands.    The relief plaintiff asks amounts practically to preventing the two companies from buying washing powder to be sold in their cartons and under their labels, from any one but him; and this for the reason that they have built up a good will for the Queen and Red Cross brands of washing powder while using the powder he makes.    We cannot interfere to that extent with the right of contract.    Suppose the supply companies should put up, under their labels, a powder better than plaintiff's and adapted to increase the good wills of the companies; could they be enjoined by plaintiff from doing so?    Obviously not; for to do so would be to control their business at his instance when no right of his was being violated by them.    This case goes beyond any other we have seen in the vital fact that plaintiff never appropriated a trade-mark or trade-name to his product, or in any way designated it as his, so as to become entitled to whatever popularity it might acquire.    If he had, and the product had obtained good will under the distinctive mark or name given it, he would be protected.    But instead of following that method of business, plaintiff, by authorizing other parties to advertise the powder under their names and as

their products, enabled these parties to add thereby to the good wills of their businesses any popularity achieved by the powder. Dealers may use labels or trade-marks to distinguish the goods they handle, and the manufacturers who permit their products to be thus vended have no interest in the brands. [Levy v. Wait, 56 Fed. 1016.] That plaintiff did not originate and had never used the devices he seeks to enjoin the defendants from using, distinguishes his case from the one most relied on as entitling him to relief; namely [Shaver et al. v. Heller & Merz Co., 108 Fed. 821; s. c., 102 Fed. 882]. In that case the Heller & Merz Co., or its predecessor, had invented two kinds of bluing denominated the American Wash Blue and American Ball Blue. Those articles were manufactured by Heller & Merz Co. for the firm of Olmsted & Co. of Cedar Rapids, which firm, as well as other dealers, sold them to the trade; the customers of Olmsted & Co., supposing the firm were the manufacturers of the bluings. Subsequently Shaver and his associates bought out Olmsted & Co. and thereafter put up bluings of their own make instead of the original articles, under said brands. It was to restrain this conduct that the bill was filed by the Heller & Merz Co. and sustained by the court. In the opinion of the United States Circuit Court of Appeals, it was distinctly stated that the brands or trade-names were conceived and applied to their products by the original makers, the predecessors of the Heller & Merz Co., had been notoriously used by said company for years to distinguish its goods, and that the good will of the commodities as well as the brands or trade-names were the property of the said company. In every other instance in which the trade-name or the right to use a package of a certain style, was protected, it appeared that the complainant had originated and used the name or mode of packing in order to distinguish his goods, and assist them in obtaining a good will. The brands under which the plaintiff's powder had

been advertised and distributed to the trade were the general trade-names of two corporations, which did an extensive business, not only in washing powder but in various other household articles, all of which were sold under the same brand. The powder was distinguished by these brands; not by the shape of the cartons which is, in the present case, an immaterial circumstance. Plaintiff had never acquired the good will of his powder because he had chosen to remain unknown to the trade as the maker and proprietor of it, and to keep himself in the background, in consideration of the profits derived from his contract with the supply companies authorizing the latter to advertise the powder as of their manufacture. We are of the opinion that no facts have been shown to justify the relief prayed.

It is insisted that plaintiff was entitled to judgment against the Red Cross Company because it filed no answer; but as we have held Sperry is violating no right of plaintiff's in selling his powder to the two companies in the cartons described, the Red Cross Company cannot be enjoined from receiving his powder without depriving him of custom to which he is entitled.

The judgment is affirmed. All concur.