## A. J. REACH COMPANY, Respondent, v. SIMMONS HARDWARE COMPANY, Appellant.

**St. Louis Court of Appeals, February 21, 1911.**

1. **BASEBALL: Technical Terms: Definitions.** In baseball parlance, a "league" is a voluntary association of baseball clubs; a "league baseball" is any high-grade baseball; "official," as applied to a baseball, indicates that the ball has been adopted by some baseball league.

2. **TRADE-MARKS AND TRADE-NAMES: Geographical and Descriptive Words.** The word "American," being geographical, and the words "league" and "official," being descriptive, are not capable of exclusive appropriation as a trade-mark or trade-name, as applied to the manufacture and vending of baseballs.

3. ————: **Unfair Competition: When Action Lies.** A manufacturer using a word to designate his product can complain on the ground of unfair competition only when his rival uses such word on his goods to indicate that they were made by the complaining party and tries to palm them off as so made; and the use of the word cannot be restrained so long as it is confined to a use which will prevent misapprehension on the question of origin.

4. ———: ———: ———: **Defendant Held Not Entitled to Affirmative Relief: Facts Stated.** In an action by a baseball manufacturer, who had the exclusive privilege of supplying baseballs to a league known as the "American League" and whose baseball was the official ball of that league, to restrain a rival manufacturer from using the words "Official American League" in connection with his baseball, on the ground the use of such words was unfair competition, where defendant filed a cross-bill asking that plaintiff be restrained from the use of said words in connection with his baseball, on the ground the use of such words was unfair competition, inasmuch as, by virtue of prior registration of the word "American" and prior adoption and use of the words "American League" he had the exclusive right to use said words, as applied to baseballs, it is *held*, that, since plaintiff had never used the word "American" except in combination with the words "Official" and "League," thereby indicating that his ball was the official ball of the "American League," he took most effective measures to avoid giving the impression his ball was defendant's, and hence it was proper to deny the relief prayed for in the cross-bill.

5. ———: ———: **Right to Protection in Use of Trade-Name.** Where the product of a manufacturer acquires a meritorious reputation, under a designated name, before a rival commences to use such name, that reputation is considered part of the good will of such manufacturer's business—a property right, which he is entitled to have protected.

6. ———: ———: ———: **Nature of Action to Restrain Unfair Competition.** A private right of action for unfair competition is not based on fraud or imposition on the public, but is solely for the protection of the property rights of complainant, and such property rights, in the case of the manufacturer of an article, must consist in the good will or reputation acquired by the product, by reason of the words associated with it.

7. ———: ———: ———: **Plaintiff Held Not Entitled to Relief: Facts Stated.** A manufacturer of baseballs, who, by contract, had the exclusive privilege of supplying baseballs to a league known as the "American League" and whose baseball was the official ball of that league, and who used on his product the words "Official American League," could not restrain a rival manufacturer from subsequently using such words for the period covered by the contract, except on a showing that such words had become associated in the public mind with his product; the mere fact that he has an exclusive contract with the "American League" to furnish balls for use by the clubs in the league being insufficient to entitle him to such relief.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*Lewis S. Haslam* and *Nagel & Kirby* for appellant.

(1) The word "American" being geographical, and the words "league" and "official" being descriptive, neither was capable of exclusive appropriation as a technical trade-mark. Brewing Co. v. Brewing Co., 47 Mo. App. 14; Wolf Bros. v. Hamilton-Brown Co., 165 Fed. 413; Meyer Bros. Coffee Co., 32 App. D. C. 277; Wrisley Co. v. Soap Co., 122 Fed. 796. (2) Nevertheless the "American," although geographical and descriptive, when adopted and used by the Simmons Company as the trade-name of its league baseballs, acquired a secondary meaning indicating the origin of "American" League balls as the Simmons Hardware Company, and became entitled to protection from unfair use in competition. It became a "trade-name," a property right owned by the Simmons Company, which cannot be used by others as a distinctive name applied to league baseballs, nor as a descriptive word applied to them except in some way which will preclude all reasonable possibility of any other baseballs being "palmed off" on the public as a "Simmons" American League baseball. Wolf Bros. v. Hamilton Brown Co., 165 Fed. 413; Brewing Co. v. Brewing Co., 47 Mo. App. 14; Wine Co. v. Kohlman, 158 Fed. 830; Wrisley Co. v. Soap Co., 122 Fed. 796; Lowe Bros. Co. v. Varnish Co., 168 Fed. 627; Fuller v. Huff, 104 Fed. 141; Goddard v. American Peroxide Co., 122 N. Y. Supp. 360. (3) The gist of the action is deceit based on the appearance of the baseballs and packages themselves. Since it is clear from the agreed statement that the Simmons Company, and not the Reach Company, has the exclusive right to the name "American League" as applied to baseballs, the decree was for the wrong party. Canal Co. v. Clark, 13 Wall. 311; Wolf

Bros. v. Hamilton Brown, 165 Fed. 413; Wrisley Co. v. Soap Co., 122 Fed. 796; Sterling Remedy Co. v. Eureka Co., 80 Fed. 105. (4) The court erred in holding that the "unwary purchaser" afforded the true test of infringement. Centaur Co. v. Marshall, 97 Fed. 785; Drug Co. v. Pasfield Co., 102 Fed. 490; Sterling Remedy Co. v. Eureka Co., 80 Fed. 105; Potter Drug Co. v. Pasfield Co., 102 Fed. 490; Van Camp Co. v. Cruickshanks Co., 90 Fed. 814; Wrisley Co. v. Soap Co., 122 Fed. 796; Dietz v. Mfg. Co., 170 Fed. 865. (5) The use of the word "official" by the Simmons Company was proper and was not an invasion of respondents' rights. American Washboard Co. v. Mfg. Co., 103 Fed. 281; Watch Co. v. Watch Co., 179 U. S. 665; Canal Co. v. Clark, 13 Wall. 311. (6) An inspection of the league baseballs introduced in evidence, with the packages in which they are offered for sale, affords the best criterion by which to determine whether appellant is trying to palm off its goods for those of respondent, and demonstrates that it is not. Therefore, the decree was erroneous. Brewing Co. v. Brewing Co., 47 Mo. App. 14; Tob. Co. v. Tob. Co., 52 Mo. App. 10; Sanders v. Jacobs, 20 Mo. App. 96; Sterling Remedy Co. v. Eureka Co., 70 Fed. 704; Procter & Gamble Co. v. Globe Ref. Co., 92 Fed. 359; Wolf Bros. v. Hamilton Brown, 165 Fed. 413; Nicholson v. Stickney Cigar Co., 158 Mo. 158; Lorillard v. Peper, 86 Fed. 956; Drug Co. v. Soap Co., 102 Fed. 490; Starch Mfg. Co. v. Duryea, 101 Fed. 117; Centaur Co. v. Marshall, 97 Fed. 785; Lamont & Co. v. Hershey, 140 Fed. 763; Wrisley v. Soap Co., 122 Fed. 796; Dist. Co. v. Martinoni, 117 Fed. 186.

*Boyle & Priest, T. M. Pierce* and *R. E. Moloney* for respondent.

(1) Where the use of a phrase, although not a trade-mark, is calculated to deceive the public, its use will be enjoined. Brewing Co. v. Brewing Co., 47 Mo.

App. 19; Gaines v. Grocery Co., 107 Mo. App. 531; Carson v. Ury, 9 Fed. 777; Keller v. Shaver, 102 Fed. 888; Shaver v. Keller, 108 Fed. 826; Nims on Unfair Competition, pp. 2, 3. (2) Unfair competition may be committed by the use of words, marks or symbols, not subjective to exclusive appropriation by any one, and its existence depends upon the question of fact whether what was done in any special case tends to pass off the goods of one man as being those of another. Carbonating Co. v. Carbonating Co., 58 Mo. App. 418. (3) The fact that the defendant printed its name in conjunction with the objectionable words does not relieve the misuse. Menendez v. Holt, 128 U. S. 521. (4) While the appellant by using the words "American League," may have advertised itself in that way and caused the words to be associated with itself, and have a secondary meaning, still, the respondent could also use the same words, if the words were accompanied with such distinguishing marks or matter as would plainly indicate that they were not being used, with their secondary signification, to deceive the public into thinking that baseballs so stamped were the baseballs of the Simmons Hardware Company. Wolf Bros. & Co. v. Shoe Co., 165 Fed. 418.

STATEMENT.—This in an injunction suit brought to restrain defendant from manufacturing and vending its baseballs in imitation of the baseballs manufactured and vended by plaintiff, and from labeling, branding and stamping its baseballs with the words "Official American League." In its petition the plaintiff alleges "that under the terms of written agreements entered into by it, with the American League of Professional Baseball Clubs," . . . "known to the public as the 'American League,' it has had continuously since the organization of said league and now has the exclusive right and privilege to manufacture and furnish all the baseballs used by said 'American League' and the base-

ball clubs composing it;" that plaintiff vends said base-balls to the public; "that in manufacturing and vending said baseballs it used a red and blue thread in stitching on the covers of said baseballs, and places on said balls the following label, brand or stamp, to-wit: 'Official American League Ball,' as a trade-mark or trade-name to indicate that it is the official baseball of said 'American League.'" That defendant manufactures and vends to the public baseballs which are stitched with red and blue thread in imitation of the baseballs manufactured and vended by plaintiff, and which are practically identical in appearance to the baseballs manufactured and vended by plaintiff, and which bear the following false, fraudulent, misleading, deceptive and imitative label, brand and stamps, to-wit: 'Official American League.'" "That the defendant well knows plaintiff's exclusive right and privilege to manufacture and vend the official baseball of said 'American League' but defendant for the purpose of falsely and fraudulently deceiving and misleading the public and to cheat, defraud and damage plaintiff and injure plaintiff's rights, it stitches, manufactures and labels, brands and stamps its baseball as aforesaid." "That defendant threatens to continue and is still continuing the wrongful and unlawful act aforesaid, although requested by plaintiff to desist therefrom," etc.

In addition to a general denial and certain allegations of fact relied upon by defendant as justification of the use by it of the words "Official American League" which are not necessary to be set forth, defendant's answer proceeds as in the nature of a cross-bill, alleging that by reason of its prior registration of the word "American" as a trade-mark, and prior adoption and use of the words "American League" as applied to baseballs, it has the exclusive right and privilege of using said words "American League" as applied to baseballs and prays that plaintiff be enjoined from using them in that connection.

155 App.—27

The trial court found that both plaintiff and defendant have an equal right to the use of the words "American League" as applied to baseballs, and denied defendant's prayer that plaintiff be restrained from using them. It did, however, restrain the defendant from using the word "official" in combination with the words "American League." Defendant has appealed and now contends that the decree was erroneous in both of the particulars just mentioned. The case was tried and submitted upon an agreed statement of facts, supplemented only by the introduction in evidence of the respective baseballs of the parties, together with their wrappings or boxes, indicating the manner in which such baseballs were offered to the public for sale and sold. These balls, etc. are before us for our inspection.

The facts necessary to an understanding of this opinion, as disclosed by the agreed statement of facts and the exhibits, may be briefly stated as follows: The plaintiff is a manufacturer and dealer in baseballs. The defendant is a dealer in baseballs. The plaintiff's baseball contains on its cover the words "Official American League" and a circular design enclosing the word "Reach" and the words "Trade-mark." From what we will say concerning lack of similarity in the balls, we will not more definitely describe plaintiff's ball, and will be equally limited in our description of defendant's ball when we come to it. The wrapper or box containing plaintiff's ball consists of a pasteboard box, the general color tone of the outside of which is a green background covered by a pattern composed of a number of small reproductions of the Reach trade-mark. On one face of the outside of the box there is what looks like a label printed in red ink on a white background, reading:

"This is The
Official Ball
and is
Absolutely Guaranteed."

On the opposite face of the box there appears what looks like a label printed in red ink on a white background, and consisting of a large copy of the Reach trade-mark. On one of the two ends of the box which open there is printed in red ink on a white background, on the upper flap, the words:

"THE REACH 'OFFICIAL'
"AMERICAN LEAGUE BALL."

And on the lower flap, at the upper edge, the words:
"A. J. REACH CO.,
PHILADELPHIA."

To close the box, a strip of paper is pasted around the box in such a way as to close the two ends which open, which paper is divided into four sections. Section 1 contains a copy of the trade-mark as it appears stamped on the ball. Section 2 bears the words, printed in blue ink:

"OFFICIALLY RECOGNIZED
AND ADOPTED BY THE"

and in red ink:
"AMERICAN LEAGUE."

Section 3 contains the words:
"The Reach Official American League Baseball," enclosed in an ornamental sign, a reproduction of the trade-mark being at each corner of the sign.

Section 4 bears the following:
"I hereby certify that Reach's Official American League Ball, manufactured by A. J. Reach Company, of Philadelphia, has been adopted as the official ball of the American League of Professional Baseball Clubs and must be used in all games.

"B. B. JOHNSON, Prest."

The defendant's ball has stamped on it the words "S. H. Co.'s Official American League."

The package or box in which the defendant's ball is offered for sale and sold consists of a pastboard box, the outside of which is a plain background colored bright

red, having no design upon the background. The printing on the box itself is all in plain black. On one side are the words:

"SIMMONS"

a large monogram embodying the letters ("S. H. Co.");
then

"OFFICIAL AMERICAN LEAGUE
Double Stitched."

On one of the ends which open, on the upper flap, are the words:

"THIS BALL CONFORMS,
IN WEIGHT AND SIZE TO"

And on the bottom flap:

"BOTH AMERICAN and
NATIONAL LEAGUE REGULATIONS."

The box is closed by a strip of white paper covering the ends which open, and bearing in blue letters the following inscriptions—in one panel, on one side:

"SIMMONS' No. 1-½
OFFICIAL AMERICAN LEAGUE
is Guaranteed to Stand
Nine Innings."

In another panel: "American Baseball Goods" in a circle and surrounding a large monogram "S. H. Co." In another panel:

"THE NAME 'AMERICAN'
ON
BASE BALL GOODS
MEANS QUALITY."

In another panel a representation of the American flag on a baseball as a back ground, with the words "Trademark".

Each party has spent large sums of money in advertising its ball, stamped, enclosed and marked as aforesaid, and the business of each in the sale of baseballs so stamped, etc., has been and is extensive in various parts of the United States in the same territory

and promises to continue to be so unless restrained. There is no such similarity in the appearance of the balls or their packages or boxes as could possibly deceive a purchaser, desiring a ball of one, into buying a ball of the other. Whatever similarity there is in color, form and texture appears to be merely incident to the proper manufacture of baseballs of high grade and tasteful appearance.

In baseball parlance, a baseball "league" is a voluntary association of baseball clubs. At all the times we are concerned with there have been a great many of these "leagues" in the United States, some professional, some non-professional. A "league" baseball is any high grade baseball.

"Official" as applied to a baseball indicates that the ball has been adopted by some baseball league.

It seems to be the practice or custom of baseball leagues to adopt some particular baseball or several baseballs as the so-called "official" ball or balls, with which games played by the clubs constituting such leagues may be played, the purpose being to secure uniformity in the games through the use of the standard ball thus adopted. It seems also to be the practice of manufacturers and dealers in high grade baseballs of the kind termed "league balls" to have their ball adopted by some league and then call their ball an "Official League Ball." Thus a ball of the Victor Sporting Goods Co. is called "Official Victor League Ball;" the ball of the Draper & Maynard Co. is called "Official League Ball"; the ball of H. Harwood & Sons is called "Keefe Official Players League Ball", also "Becannon Official League Ball"; the ball of Wm. Wood is called "Official League Ball."

Since the year 1892 and up to the year 1900 the defendant produced, advertised and sold some ten thousand dozen baseballs bearing the words "American League" and has continuously since that year manufactured, advertised and sold baseballs bearing those

words. In 1894 it had the word "American" registered as its trade-mark, as applied to baseballs, under the provisions of the Missouri statutes. Up to the year 1900, there was no league of baseball clubs known as the "American League." In the year 1900, the "American League of Professional Baseball Clubs" was organized. It is an association bound together by articles of agreement and has for its purpose the e^hibition of baseball playing contests between clubs representing different great cities, for the purposes of revenue, the spectators being charged an admission fee. The "American League· of Professional Baseball Clubs" is well known throughout the United States as the "American League" and we will call it by that name hereinafter. It and another league called the "National League" are the two greatest baseball leagues in the United States. From the standard of attendance and skill of the players participating, they are far superior to any other league or association of baseball clubs in the United States and are commonly known as the "Major Leagues" to distinguish them from the less important leagues, which are known as "Minor Leagues". Since December 17, 1900, the plaintiff has had a contract with the "American League" whereby the latter and the clubs composing it, have been bound not to use, either in games or practice, any other ball than one to be manufactured and supplied by the plaintiff, and the plaintiff's baseball has been exclusively used by the clubs composing said "American League" in the regular exhibition games which are played according to a schedule mutually agreed upon by said clubs, and the plaintiff's baseball has, since the execution of said contract, been adopted by said league as the official ball with which all games of that league must be played. The "American League" and the "National League" have each adopted a rule prescribing the weight and size of the ball to be used by them, and providing that "The Reach American League and the Spalding National League ball must be used in all games played under these

rules." The defendant's ball conforms in weight and size to this rule. The defendant's ball, which it calls the "Official American League" ball, has not been adopted and is not used by the "American League", but in 1908 it had its baseball adopted as the "Official" ball of the "Manufacturers League", a minor local league of non-professional clubs in the City of St. Louis.

CAULFIELD, J. (after stating the facts).—We may say at the outset that this case does not involve a technical trade-mark. The word "American" being geographical, and the words "league" and "official" being descriptive, none of them was capable of exclusive appropriation as a trade-mark or trade-name. [American Brewing Co. v. St. Louis Brewing Co., 47 Mo. App. 14; Wolff Bros. v. Hamilton Brown Co., 165 Fed. Rep. (C. C. A. 8th C.) 413, 414; Alden v. Gross, 25 Mo. App. 123, 130; Liggett & Meyers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. 53, 60, 15 S. W. 843.] The parties concede this in their briefs, but each insists that under the law of unfair competition it is entitled to equitable relief against the other; the plaintiff claiming the right to have the defendant restrained from the use of the word "official" in combination with the words "American League", and the defendant claiming the right to have the plaintiff restrained from using the word "American" as applied to "league" baseballs. We will first dispose of the claim of the defendant.

I. The defendant's claim is based upon the idea that the word "American" should not be considered or treated as merely a geographical name for the reason that it had acquired a secondary signification in connection with its use by defendant. The word "league" has, as we have mentioned in the statement of facts, two descriptive meanings. As applied to a baseball it means a high grade baseball. It also means a voluntary association of baseball clubs. Conceding that "American" acquired a secondary signification as applied to defendant's

ball, then the words "American League" meant, when used by defendant, a high grade baseball vended by defendant. In this sense it pointed to defendant as the origin of the baseball stamped with those words. But there was a sense entirely different from that in which the words "American League" might be applied to a baseball. This is, as we have seen, that the ball was the "official" ball of the American League of Professional Baseball Clubs, commonly known as the "American League". This last meaning is perhaps not complete without the addition of the word "official", that is, without the ball being called the "Official American League" baseball, as the plaintiff called its ball. There is, then, a sense in which the word "American" may be properly, and is usually, applied to a baseball, entirely disassociated from the idea that the defendant is the origin of such baseball. If plaintiff uses the word in that sense, defendant is not injured. It is only when others use the word as indicating defendant as the origin, when they try to palm off their goods as the goods of defendant, that defendant can complain. Defendant cannot have plaintiff restrained from using the word so long as it confines such use to the disassociated sense by such limitations as will prevent misapprehension on the question of origin and do nothing calculated to result in the palming off of its goods as the goods of plaintiff. "The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for another." [Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 674.] Now plaintiff has never tried to use the word "American" as applied to league baseballs except in combination with the words "official" and "league", and it would be trifling with the facts to assume that it has used those words in a sense other than that the league ball to which plaintiff applied the word was the official ball of the American League of Professional Baseball Clubs. This sense is, as we have seen, disassociated from the secondary signification which the de-

fendant claims that the word "American" acquired as applied to its baseball. That the plaintiff took ample and most effective measures to confine its use of the word to the disassociated sense we have mentioned and to avoid giving the impression that its ball was the defendant's is so fully shown by our statement of facts that we need not repeat here what was said there. It is apparent that the most valuable trade sense in which the word could be used is that the ball is the official ball of the "American League" and that the efforts of the plaintiff have been painstaking to express that sense. The trial court did right in refusing to restrain the plaintiff from using the words "American League" or the word "American".

II. Coming now to plaintiff's case, we find, as already indicated, that it must rest, if at all, on a claim to the exclusive right to the use as applied to baseballs, of the word "official" in combination with the words, "American League". Plaintiff is in the situation of trying to restrain the defendant by suit in equity from using ordinary descriptive or geographical words which are free for the world to use, unless the plaintiff has in some manner acquired an exclusive right to use them as applied to baseballs. It concedes that it has no right to use them as a technical trade-mark. It relies, then, and must rely upon the law of unfair competition, under which plaintiff cannot have the relief sought, unless the use by defendant of the word or combination in question tends to palm off its goods as being the goods of the plaintiff. Not that it need be shown that the plaintiff's *name* has been misused, nor that the defendant's name has been concealed, but it must be shown that, by association, the word "official," in combination with the words "American League," had come to mean to the public the plaintiff's baseballs alone, and that defendant is vending baseballs under that designation so as to give the public the false impression that they are the balls

made familiar and popular by plaintiff as the "Official American League" ball. If it be shown that plaintiff's ball had acquired a meritorious reputation as the "Official American League" baseball, before defendant commenced to use the phrase, that reputation is considered part of the good will of the business of the plaintiff, a property right, which it is entitled to have protected. But plaintiff must make that showing; it must prove that its baseballs had acquired a reputation with the public as the "Official American League" baseballs, or else it has not shown itself to have any property right to be protected and is not entitled to relief. How well has plaintiff met its obligation in that respect? The case was tried upon an agreed statement of facts. It stated that "for some time prior to the institution of this suit, and now, the plaintiff's baseball and the *defendant's* baseball have been sold extensively in various parts of the United States in the same territory." After describing plaintiff's ball, the statement says, "The A. J. Reach Company has spent considerable sums of money in advertising the ball above described, and has sold the ball extensively through out the United States." After describing the *defendant's* ball, the statement says, "The *Simmons Hardware Company* has spent considerable sums of money in advertising the ball above described, and has sold the same extensively throughout the United States." This is the only language tending to show that the public has come to know the plaintiff's ball as the "Official American League" baseball. But it makes *exactly the same showing as to the defendant's ball.* It is not stated that the words have become associated in the public mind with either ball, and the inference, if any, to be derived from the language, shows the words to have been used as much and as long in connection with defendant's ball as with that of the plaintiff. Clearly it was not shown in this case that the words in dispute had acquired any secondary signification, by association, as applied to the plaintiff's baseball alone

and, therefore, defendant's use of them could not tend to palm off its goods as the goods of the plaintiff. And we are impressed that plaintiff did not try its suit upon that theory. It is very evident that plaintiff relied upon its contract with the "American League" to entitle it to the relief sought. Briefly, the plaintiff's case is reduced to this: That the plaintiff's ball has not (so far as shown by the evidence) acquired any reputation as the "Official American League" baseball and therefore those words are not part of the good will of its business and there is no such good will to be protected, but plaintiff alone manufactures and vends the ball which has been adopted as "official" by the "American League", and defendant is telling a falsehood and committing a fraud upon the public when it uses the words in dispute upon its balls. The only question presented for our consideration, then, is, can the plaintiff, merely because it is the only one who can truthfully say that its baseballs have been adopted as "official" by the "American League", restrain the defendant from falsely claiming the same honor for its baseballs. We feel constrained to conclude that it cannot. In cases involving the law of unfair competition the private right of action "is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of complainant." [American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. Rep. 281; Shelley v. Sperry, 121 Mo. App. 429, 99 S. W. 488.] And, in a case like this, as we have already indicated, such property right of plaintiff must consist in the good will or reputation acquired by the association of the words sought to be appropriated with the goods of the plaintiff. Plaintiff could not acquire the exclusive right to use the disputed words by contract with the "American League" nor by becoming the only one who could truthfully use the words. Such contract and acquired status has no hearing on this controversy. The plaintiff must stand or fall upon the question whether it has shown that the words

in dispute have acquired a secondary signification in connection with its baseball, and as we have seen it has failed to make that showing.

We wish to qualify our remark that the contract has no bearing on this controversy to this extent: If on a retrial the circuit court should conclude that the plaintiff is entitled to injunctive relief under the rule here enunciated it will limit the period of restraint to the period of plaintiff's right to have its ball exclusively used by the "American League," for beyond that period the plaintiff may be guilty of fraud and deceit in designating its ball as the "Official American League", baseball, and it will not be aided in that respect by the court. [Grocers Journal Co. v. Midland Publishing Co., 127 Mo. App. 356, 369, 105 S. W. 310.]

The decree of the circuit court, excepting only that part which denies the prayer for relief set out in defendant's answer, is reversed, and in order that the plaintiff may have opportunity to amend its pleading and offer proof as indicated in this opinion, if the facts justify, and it is so advised, the cause is remanded for retrial. *Reynolds P. J.,* and *Nortoni, J.,* concur.