WSM, INCORPORATED, Plaintiff,

v.

Dennis E. HILTON, an individual, and Country Shindig Opry, Defendants.

No. 82–4107–CV–C–5.

United States District Court,
W. D. Missouri, C. D.

Aug. 27, 1982.

L. Lawton Rogers, Arlington, Va., David Brydon, Jefferson City, Mo., for plaintiff.

Lionel L. Lucchesi, St. Louis, Mo., James W. Gallaher, Jefferson City, Mo., for defendants.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

This action for permanent injunctive relief arises out of claims by WSM that Hilton and the Country Shindig Opry have infringed WSM's federally registered trademarks in violation of 15 U.S.C. § 1114(1), have engaged in unfair competition in vio-

lation of 15 U.S.C. § 1125 and Missouri common law, and have diluted the distinctiveness of WSM trademarks in violation of Section 417.061 of the Revised Statutes of Missouri. The parties have agreed that the central issue to be adjudicated by this Court is whether or not the word "Opry" is generic. If the Court finds that it is generic, then Hilton and the Country Shindig Opry are entitled to use it in describing the nature of the entertainment services which they offer to the public. If, on the other hand, the Court finds that "Opry" is not generic and has service-mark significance, then WSM is entitled to permanently enjoin the defendants' use of the word. The parties concede that the Court's finding on this issue has the same effect on each of the four counts alleged by WSM.

The case was bench-tried on July 13 and 14. After the trial, the parties submitted exhaustive briefs, proposed findings of fact and proposed conclusions of law. The Court, after a thorough review of the evidence and the law, finds that the word "opry" is generic, that the defendants may use the word to describe their entertainment services, and that, as a consequence, the registration of the word "Opry" by WSM in January of 1982 is cancelled.

## I. FINDINGS OF FACT

1. WSM is a Tennessee corporation with a place of business located at 2800 Opryland Drive, Nashville, Tennessee. Dennis Hilton is a resident of Missouri and has a place of business at Highway 54 in Osage Beach, Missouri. Country Shindig Opry is a Delaware corporation which has its principal place of business in Osage Beach, Missouri. Hilton is the sole shareholder, sole director and chief executive officer of Country Shindig Opry.

2. WSM has for many years provided entertainment services in interstate commerce under the name of "Grand Ole Opry." The name "Grand Ole Opry" was registered on July 11, 1950 and bears U. S. Registration Number 527,589. The registration has been renewed and is presently in effect. On May 21, 1957, WSM obtained a second federal registration of "Grand Ole Opry" for entertainment services which would be produced for television. The second registration bears the number 645,898.

3. WSM is the owner of the registered mark known as "Opryland USA" for amusement park services. The mark was obtained on February 6, 1973, and bears U. S. Registration Number 952,938.

4. WSM is the owner of the registered mark known as "Opryland USA" (design). It was obtained on February 26, 1974, and bears U. S. Registration Number 979,662.

5. WSM is the owner of the registered mark known as "Opryland Hotel" for hotel and restaurant services. The mark was obtained on February 17, 1981, and bears U. S. Registration Number 1,147,384.

6. WSM is the owner of the registered mark known as "Opryland Hotel" (design). It was obtained on April 14, 1981 and bears U. S. Registration Number 1,151,290.

7. WSM is the owner of a registered mark known as "Opryland" for amusement park services. The mark was obtained on April 28, 1981, and bears U. S. Registration Number 1,152,702.

8. WSM is the owner of the registered mark known as "Opryland Talent Agency" for entertainment booking services. The mark was obtained on August 4, 1981, and bears U. S. Registration Number 1,164,025.

9. WSM is the owner of a registered mark known as "Opry" for entertainment services. The mark was obtained on January 12, 1982, and bears U. S. Registration Number 1,186,169.

10. The word "opera" has been in common use from the eighteenth century to the present in connection with classical grand opera and with satirical references to grand opera. Several of the satirical references to grand opera include "horse opera," "medicine opera," "jig opera," and "burnt-cork opera." A "horse opera" describes a particular genre of cowboy-western movie in which western folk songs are sung by the cowboys. A "medicine opera" describes an entertainment program which often con-

sists of the showing of a short motion picture, of the live performance of folk or country songs and dances, of comical displays by white persons disguised as Negroes, and of the sale of medicinal and other goods. A "jig opera" or "burnt-cork opera" describes a minstrel show performed by black persons or white persons with blackened faces. These types of "operas" were often performed in the town "opera house."

11. Certain persons who reside along the mid-Atlantic seaboard, in Appalachia and in the Ozarks have adhered to a rule of pronunciation under which words ending with the letter "a" are pronounced as if the word ended with the letter "y". The word "opera" is among at least 175 words to which this rule of dialectic pronunciation applies. For example, "opera" is pronounced as "opery" or "opry". The horse, medicine and jig operas were often respectively referred to as "horse opry" or "hoss opry", "medicine opry" or "med-opry", and "jig opry."

12. WSM first made commercial use of the word "opry" in 1927. The adoption of the "Grand Ole Opry" mark by WSM had its origin in the satirical contrast to a program of grand opera which immediately preceded the WSM Barndance Radio Program. Judge George D. Hay, the WSM radio announcer for the Barndance, established the satirical reference when he commented on the program that "for the past hour we have been listening to music taken largely from grand opera, but from now on we will present, 'The Grand Ole Opry.'" Judge Hay, as a newspaper reporter who lived in close contact with the rural and mountain people of Tennessee, was aware of their common vernacular, was familiar with the dialectic variation of "opera" as "opry" and knew that the satirical comparison with grand opera would be enhanced by the use of the word "opry."

13. The word "opry" is listed and defined in *Webster's New Third International Dictionary* as a dialectic variation of the word "opera" and as a substandard word which is today used by certain portions of the speaking American public. The use of the word "opry" is more likely to occur in oral speech rather than in printed matter. *The American Thesaurus of Slang* lists "opry" as a "musical performance," describes an "opery house" as a "theatre," and includes "horse opera" and "hoss opry" among terms referring to a "circus."

14. The word "opry" has been and is now used in connection with country music performances of various types. Cowboy performers in the "horse oprys" sang western songs. Minstrels in the "medicine," "jig" and "burnt-cork" oprys sang country and folk songs, and danced to similar music. Today, the word "opry" describes a show consisting of country music, dancing and comedy routines. It does not always connote "Grand Ole Opry" when it is used in oral or written discourse. When "opry" is used in connection with a description of the country music entertainment services provided by the Grand Ole Opry, it connotes the Grand Ole Opry. Similarly, when it is used in connection with the country music entertainment services provided by other organizations, like Dennis Hilton's Country Shindig Opry Show, Lee Mace's Ozark Opry, the Grapevine Opry, the Union Mill Opry, the Country Hayride Opry, and the Kansas City Opry, it connotes those organizations.

15. On February 20, 1962, Lee Mace became the owner of the registered mark known as "Ozark Opry" for entertainment services. That mark bears U. S. Registration Number 727,814. Mace had been providing opry entertainment to the public at his business establishment in Osage Beach, Missouri since 1954. In the early 1960's, Austin Wood, a licensee of WSM, began to provide country music entertainment services to the public under the name Austin's Ozark Nashville Opry. Austin's Opry featured persons who performed at the Grand Ole Opry. Lee Mace objected to Austin's use of the word "Ozark." As a consequence, Austin changed the name of his show to Austin's Nashville Opry.

16. In 1969, WSM instituted suit against Kansas City Southern Industries the employer of Lee Mace, for infringement of its

Grand Ole Opry registered mark. The suit was settled in 1970. Under the settlement agreement, the mark "Ozark Opry" was assigned to WSM under a license agreement executed on May 11, 1970 and reaffirmed on May 11, 1980. The license agreement prohibits Mace from using the business title "Ozark Opry" in Kentucky and Tennessee. Mace is not prohibited from using the word in the other 48 states. The agreement also prohibits Mace from advertising that his opry is connected with the Grand Ole Opry, and establishes certain standards which Mace must follow with respect to the appearance of the facility, the quality of the performance and the lyric content of the songs sung at the opry. Mace writes the show, and selects the members of the cast and the songs to be performed. WSM has periodically checked the performance against the standards established in the license. WSM has never questioned any of Mace's business practices or the quality of the performances.

17. Hilton commenced business as the Country Shindig on May 25, 1970. The name "Country Shindig" was used from May 25, 1970 to the summer of 1973. In the summer of 1973, the name was changed to Denny Hilton's Country Shindig Opry Show. The name was changed after Hilton learned that potential customers believed that the show consisted wholly of dancing. From the summer of 1973, the name Denny Hilton's Country Shindig Opry Show has appeared on stationery, contracts, billboards, handbills, and newspaper and magazine advertisements. In 1975, 1976 and 1977, billboard advertisements displayed the words "Country Shindig Opry." These words were accompanied by a caricature of Hilton. From 1978 to the present, Hilton has advertised his business as Denny Hilton's Country Shindig Opry Show.

18. On February 17, 1976, Hilton became the owner of the registered mark known as "Country Shindig" for country music entertainment. The mark bears U. S. Registered Number 1,034,092. In each of the years 1979 through 1982, WSM demanded that Hilton cease and desist his alleged infringement of the mark "Grand Ole

Opry." Hilton made no response to the demands until 1982.

19. Lee Mace's Ozark Opry and Denny Hilton's Country Shindig Opry have competed directly in the area surrounding Osage Beach, Missouri since 1973. The public is cognizant of the different ownership of the two shows and has exhibited no confusion in distinguishing them. The defendants' use of the business title "Denny Hilton's Country Shindig Opry Show" has not caused confusion in the minds of the public with respect to the Grand Ole Opry or any of the marks owned by WSM. Persons who attend the Ozark Opry or the Country Shindig Opry Show do not believe they are attending a performance of the Grand Ole Opry. Some customers of the Ozark Opry have inquired as to whether there is some association between the Ozark Opry and Grand Ole Opry. The Ozark Opry is a licensee of WSM. The Country Shindig Opry is not.

## II. CONCLUSIONS OF LAW

WSM has alleged four counts in this action for permanent injunctive relief. Two counts are based on federal causes of action, while two are based on Missouri law. The Court has jurisdiction over the subject matter of this action in accordance with the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1331(a) and 1332(a)(1). After an examination of each of the four counts, this Court finds, for the following reasons, that permanent injunctive relief is not warranted in this case.

### A. Trademark Infringement—Federal Law.

WSM alleges in Count I of its complaint that the defendants have infringed its trademark rights protected under 15 U.S.C. § 1114(1) of the Lanham Act by using a mark which is confusingly similar to the marks owned by WSM. The test of infringement under Section 1114(1) requires a showing that confusion, mistake or deception is "likely" to occur in the minds of the public. Proof of "actual" confusion, though

preferable, is not necessary for entitlement to protection under the statute. The evidence should focus on the general impression created in the minds of the public which may have an imperfect recollection of a particular mark. *Vitek Laboratories, Inc. v. Abbott Laboratories, Inc.*, 675 F.2d 190, 192 (8th Cir. 1982). WSM contends that the defendants' use of the business title "Denny Hilton's Country Shindig Opry Show" is likely to cause confusion with respect to WSM's use of the marks known as Grand Ole Opry, Ozark Opry, Opryland Hotel, Opryland Talent Agency, Opryland U. S. A., Opryland, and Opry. The Court analyzes WSM's contentions in two parts, using a separate analysis for the mark known as "Opry."

1. WSM Marks Other Than "Opry".

With the single exception of the mark known as "Opry," the defendants' business title is not likely to cause confusion with the other marks owned by WSM. *See, Vitek Laboratories, supra; Squirt Co. v. Seven-Up Co.*, 628 F.2d 1086, 1090–91 (8th Cir. 1980); *Sweetarts v. Sunshine, Inc.*, 380 F.2d 923, 927 (8th Cir. 1967). The determination of whether there is a likelihood of confusion requires an application of several factors to the particular facts of this case. *Vitek Systems, supra* at 191–92. Those factors include the similarity in the appearance and meaning of WSM's marks and the defendants' business title, the degree of care that is likely to be exercised by the purchasers of the parties' entertainment services, the intention of the defendants in selecting their business title, and the existence of actual confusion. *Id. See also*, Restatement of Torts § 731. Though these factors tend to merge into each other under the facts of this case, and ultimately emerge as a generalized finding on the "likelihood of confusion" test, the factors can be reviewed and analyzed separately.

■ There is no substantial similarity in the appearance or meaning of the defendants' business title and the marks owned by WSM, or in the advertising designs used by the respective parties. For example, the "Opryland USA" and "Opryland" designs registered by WSM feature a guitar, with the sound hole of the guitar serving as the "O" in "Opryland," and a red, white and blue "USA" insignia suggesting the national flag of the United States. The defendants' design, on the other hand, usually features "Country Shindig" in prominent type and "Denny Hilton's" and "Opry" in subordinate type. The design features a caricature of Denny Hilton.

■ The members of the public who purchase country music entertainment services exercise a degree of care which obviates the likelihood that they will be confused as to whose services they are purchasing. The public has exhibited no confusion in distinguishing between Lee Mace's Ozark Opry and Denny Hilton's Country Shindig Opry Show, or in distinguishing between the Grand Ole Opry and Denny Hilton's Country Shindig Opry Show. Persons who attend the Ozark Opry or the Country Shindig Opry Show do not believe that they are attending a performance of the Grand Ole Opry.

The defendants selected the business title "Denny Hilton's Country Shindig Opry Show" in order to remedy a misconception held by the public about the entertainment services which they provided. The defendants changed the business title from "Country Shindig" to "Denny Hilton's Country Shindig Opry Show" because they learned that potential customers believed that the show consisted wholly of dancing. The word "opry" was added in order to convey to the public that the defendants did more than perform dance routines. It was not added in order to deceive the public into thinking that Grand Ole Opry performers would appear or that the owner of the Grand Ole Opry, WSM, sponsored the show.

No evidence was introduced by WSM which showed that the public was actually confused about whether there was an association between the Grand Ole Opry and Denny Hilton's Country Shindig Opry Show. Though some of the patrons of Lee Mace's Ozark Opry believed that the Ozark Opry was associated with the Grand Ole

Opry, the patrons' beliefs were well-founded. The Ozark Opry is a licensee of WSM. WSM has a right to exercise control over the quality and name of Lee Mace's show, but does not have a similar right with respect to Denny Hilton's Country Shindig Opry Show. Thus, for all of these reasons, the Court cannot conclude that defendants' use of "Denny Hilton's Country Shindig Opry Show" as their business title is likely to be confused with the marks owned by WSM.

2. WSM's Registration of "Opry".

■ WSM registered the mark known as "Opry" for entertainment services in January of this year. That registration is prima facie evidence of WSM's exclusive right to use "Opry" as its mark. 15 U.S.C. § 1115(a). The prima facie evidence of exclusivity, however, is rebuttable by a showing by the defendants that the word "Opry" is generic. A generic word can never function as a trademark to indicate origin. The terms "generic" and "trademark" are mutually exclusive, since the function of a mark is to identify and distinguish the goods or services of one seller from those of all others. *See* 15 U.S.C. § 1127. WSM has, therefore, properly contended that the ultimate question to be resolved by this Court is whether or not the word "opry" is generic.

■ Generic names are regarded by the law as free for all to use and are, thus, in the public domain. *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118 (1896). The Supreme Court has further observed that the "[s]haring in the goodwill of an article unprotected by patent or trademark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938). And Judge Learned Hand, in holding ASPIRIN generic, stated that the key issue in determining genericness "is merely one of fact: What do buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United*

*Drug Co.*, 272 F. 505, 509 (S.D.N.Y.1921). *See also Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787; *Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.*, 395 F.2d 457 (3d Cir. 1968); *Du Pont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (2d Cir. 1936).

■ Under this "buyer understanding" test, "opry" is a generic word which connotes in the minds of the public a country music performance that includes dancing and comedy routines. "Opry" is a dialectical variation of the word "opera" that has been in common use among certain sectors of the American population since the eighteenth century. The generic nature of the word "opry" did not change in 1927, as WSM contends, when WSM commenced its commercial use of the word. A business cannot take the generic name of a thing and appropriate it as exclusive property by extensive use and advertising. *Miller Brewing Co., supra* at 995.

Though WSM asserts that "Opry" can only connote the Grand Ole Opry, its business practices belie that assertion. For example, under a 1970 license agreement it entered into with the owner of Lee Mace's Ozark Opry, the mark "Ozark Opry" was assigned to WSM. The agreement provided that the business title "Ozark Opry" could not be used by Lee Mace in Kentucky or Tennessee and that the Ozark Opry could not advertise its connection with the Grand Ole Opry. No members of the Grand Ole Opry perform at the Ozark Opry. The terms of the agreement demonstrate that WSM regards the word "opry" as generic. It contends that "Opry" can only mean Grand Ole Opry, but specifically prohibits the Ozark Opry from advertising its relationship with WSM and the Grand Ole Opry. In addition, by prohibiting the Ozark Opry from competing in Kentucky and Tennessee, WSM has further attempted to disassociate its opry from Lee Mace's opry. Thus, WSM has asked the public not to associate the "opry" in Ozark Opry with the "opry" in the Grand Ole Opry.

Other business dealings of WSM lead this Court to the same conclusion. In 1960, WSM licensed Austin Wood to provide country music entertainment services to the public under the business title "Austin's Ozark Nashville Opry." When Lee Mace complained of Wood's use of "Ozark," Wood renamed the business "Austin's Nashville Opry." Austin's opry featured persons who performed at the Grand Ole Opry. The word "Nashville" was responsible for identification of the business by the public of Osage Beach, Missouri with the Grand Ole Opry. The word "Opry" was not responsible for the association. Similarly, Lee Mace objected to the use of "Ozark" by Wood because the public was likely to be deceived into believing that the two business establishments were associated. WSM did not challenge Lee Mace's use of "Opry" at that time and agreed to delete "Ozark" from the business title of Wood's establishment.

The leading case cited by WSM in support of its contention clearly undermines its arguments in the case at bar. In *WSM, Inc. v. Bailey*, 297 F.Supp. 870 (M.D.Tenn. 1969), the court enjoined the defendant's use of the word "Opry" as an identifying label on phonographic records which the defendant produced and promoted. The court found in favor of WSM after observing that the defendant had not produced one scintilla of documentary evidence in support of the position that "opry" was a generic term. *Id.* at 872. The same is not true in the case at bar. Hilton has supplied documentary evidence and expert testimony in support of his position. Further, the *Bailey* court noted that its decision might have been different if Bailey had used some "limiting or modifying words with 'Opry'

which would tend to eliminate any doubt" as to its connection with the Grand Ole Opry. *Id.* at 873 n.6. Though the *Bailey* court should have simply been concerned with whether or not "opry" is a generic term, its noted comments suggest that it had some hesitation about finding that "opry" was not generic. The *Bailey* court was constrained to find in the manner it did because of the paucity of documentary evidence supplied by Bailey.[1]

 As previously stated, buyers of country music entertainment services understand opry to mean a country music performance which often includes dancing and comical routines. Thus, the Court must conclude that the business title "Denny Hilton's Country Shindig Opry Show" is not likely to cause confusion in the minds of the public with regard to any marks owned by WSM, and that the term "opry" is generic and non-registerable as a trademark. WSM's registration of "opry" is cancelled. WSM's claim for permanent injunctive relief from trademark infringement under Section 1114(1) is, therefore, denied.

**B. Unfair Competition—Federal Law.**

 WSM next alleges in Count II of its complaint that the defendants have engaged in unfair competition in violation of Section 43(a) of the Lanham Act. Section 43(a) provides that

Any person who shall affix, apply, or annex, or use in connection with any goods or services . . . a false description or representation . . . and shall cause such goods or services to enter into commerce . . . shall be liable to a civil action

---

1. The other cases brought by WSM are generally not helpful to this Court in this case. For example, *WSM, Inc. v. The Benjamin Ansehl Co.*, No. 81–1314–CCA (E.D.Mo.1981), which involved a use of "Opry Time" for bath products, was resolved by a consent judgment. This case might have been illustrative if an opinion had been filed. The other cases involved much clearer examples of infringement. *See WSM, Inc. v. Tennessee Sales Co.*, No. 80–3383 (M.D.Tenn.1981) (use of "Opryland" design for souvenirs); *WSM, Inc. v. C & J Enterprises, Inc.*, No. 79–3634 (M.D.Tenn.1981)

(use of "Grand Ole Opry" for souvenirs); *WSM, Inc. v. Buck Loggins*, No. P–80–31–CA (E.D.Tex.1980) (use of "Opryland" for entertainment services); *WSM, Inc. v. Kelly*, No. 80558 (Chancery Ct.Tenn.1959) (use of "Grand Ole Opry" for entertainment services); *WSM, Inc. v. Golden Goose Corp.*, No. CA 127 (M.D. Ga.1947) (use of "Grand Old Opera" and "Radio's Original Grand Old Opera" for entertainment services). None of these decisions were accompanied by judicial analysis. Only the *C & J Enterprises* case went to trial.

by any person ... who believes that he is or is likely to be damaged by the use of any false description or representation. 15 U.S.C. § 1125(a). The purpose of Section 43(a) is to create a new federal cause of action for false representation of goods and services in commerce in order to protect those engaged in commerce from unfair competition, fraud and deception which were previously protected by common law. *In re Uranium Antitrust Litigation*, 473 F.Supp. 393 (N.D.Ill.1979); *CBS, Inc. v. Springboard International Records*, 429 F.Supp. 563 (S.D.N.Y.1976); *L. & L. White Metal Casting Corp. v. Joseph*, 387 F.Supp. 1349 (E.D.N.Y.1975). The restrictions recognized at common law are not applicable to Section 43(a) because that provision created a new federal tort which is limited only by the language of the statute. *Federal-Mogul-Bower Bearings, Inc. v. Azoff*, 313 F.2d 405 (6th Cir. 1963); *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954). Thus, in order to prove a violation of Section 43(a), WSM must demonstrate (1) that goods or services are involved, (2) that interstate commerce is affected, and (3) that there is a false description or representation. *CBS, Inc., supra* at 566.

WSM has failed to demonstrate a violation of Section 43(a). The defendants' use of the word "Opry" in its business title does not amount to a false description or representation since the word is generic. *Cf. American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655 (2nd Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980) (use of "bionic" for footwear); *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 634 F.2d 1 (1st Cir. 1980) (use of "Mart" by retail stores); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (use of "LITE"

for beer); *Philip Morris, Inc. v. R. J. Reynolds*, 188 U.S.P.Q. 289 (S.D.N.Y.1975) (use of "LIGHTS" for cigarettes). Since the word is generic, its use by the defendants is not unfair. As previously stated in this opinion, WSM's allegations that the defendants have engaged in unfair competition by "palming off" WSM's use of the word "Opry" or by causing confusion in the minds of the public is unsupported. Thus, WSM's claim for permanent injunctive relief from unfair competition under Section 43(a) of the Lanham Act must be denied.

C. Missouri Common Law and Anti-Dilution Statute.

In Counts III and IV of its complaint, WSM has alleged that the defendants have infringed rights provided it under Missouri law. In Count III, WSM alleges a violation of the Missouri Anti-Dilution Statute. *See* Section 417.061, R.S.Mo. (1978). Count IV contains an allegation that the Missouri common law of unfair competition has been abridged. The Anti-Dilution Statute provides that:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark ... valid at common law, ... shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Section 417.061, R.S.Mo. (1978).[2] The Court has not found and the parties have not cited any reported cases which construe this provision, but the Court has found several illustrative cases which refer to the common law of Missouri upon which the provision is based. *But see generally, Procter & Gamble Co. v. Johnson & Johnson, Inc.*, 485 F.Supp. 1185, 1209–10 (S.D.N.Y.1979).

Similarly, WSM has merely cited Section 417.061 in support of its anti-dilution complaint. No case authority has been advanced by WSM. The Court, however, analyzes the anti-dilution claim—like the state common law claim—separately from the federal law claims.

---

**2.** WSM has not briefed the issue of whether the actions of the defendants violated the Missouri common law of unfair competition. The Court, therefore, presumes that WSM would expect its state common law claim to suffer the same fate as its federal claims. Though it was not briefed, the Court analyzes the common law claim jointly with the anti-dilution claim.

The common law of Missouri has long recognized that the name of a business is a necessary element of its existence and that the right to the exclusive use of the name is to be protected against use by another business where the circumstances indicate that deception or confusion might result. *Great American Home Savings Institution v. Lee*, 288 Mo. 679, 233 S.W. 20, 28 (1921); *Missouri Federation of the Blind v. National Federation of the Blind*, 505 S.W.2d 1, 5 (Mo.App.1973). Thus, the question of whether the use of "Opry" by the defendants constitutes unfair competition is a determination of fact. *Missouri Federation of the Blind, supra* at 6.

Since the Court has previously determined that the defendants' use of the business title "Denny Hilton's Country Shindig Opry Show" is not likely to cause confusion or "misapprehension" in the minds of the public with respect to the marks owned by WSM, the defendants' use cannot be a basis for a common law unfair competition claim. *See A. J. Reach Co. v. Simmons Hardware Co.*, 155 Mo.App. 412, 135 S.W. 503 (1911) (common law claim). Nor can it be a basis for a claim that the distinctive marks owned by WSM are likely to be diluted under Section 417.061. Since the word "opry" is generic, and does not have a distinctive quality outside its generic nature, the question of dilution does not arise. Thus, for all of these reasons, WSM has failed to demonstrate that the defendants have violated any of its statutory or common law rights provided under Missouri law.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that WSM's action for permanent injunctive relief is denied. It is further

ORDERED that WSM's registration of the word "Opry" is cancelled. It is further

ORDERED that WSM bear the costs of this action.